[Cite as *In re C.P.*, 2020-Ohio-4978.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF:  CP | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| | : | Hon. John W. Wise, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| | : | |
| | : | |
| | : | Case No. 2020 CA 0015 |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Appeal from the Juvenile Court,
Case No. F2017-0503

JUDGMENT:        Affirmed

DATE OF JUDGMENT:        October 21, 2020

APPEARANCES:

For Plaintiff-Appellant

ANDREW E. RUSS
1000 Taylor Station Road
Suite G
Gahanna, Ohio  43230

For Defendant-Appellee

PAULA M. SAWYERS
20. S. Second Street
Fourth Floor
Newark, OH  43055

LAURIE WELLS
GUARDIAN AD LITEM
195 E. Broad St.

Pataskala, OH  43062

*Wise, Earle, J.*

{¶ 1}   Appellant mother L.P., filed this appeal from the judgment entered in Licking County Court of Common Pleas, Juvenile Court Division, which terminated all parental rights, privileges and responsibilities with regard to the 4-year-old child, C.P., and ordered permanent custody of the minor child be granted to appellee, the Licking County Department of Job and Family Services, (LCJFS or the agency).

{¶ 2}   The relevant facts leading to this appeal are as follows:

FACTS AND PROCEDURAL HISTORY

{¶ 3}   On July 18, 2017, an Emergency Ex Parte Order of Removal was issued authorizing C.P. to be taken into custody by LCJFS pursuant to R.C. 2151.31(A)(3). Concerns leading up to the involvement of LCJFS included unexplained bruising on the child's face, mother's unemployment and history of homelessness, mother's cannabis use, mother leaving C.P. with inappropriate caretakers, and failing to attend C.P's medical appointments as scheduled. C.P has DiGeorge Syndrome, a genetic disorder caused when part of chromosome 22 is missing. The disorder can cause a host of physical and behavioral issues. In C.P's case cardiac and behavioral issues make C.P's attendance at medical appointments imperative.

{¶ 4}   On July 19, 2017, LCJFS filed a complaint alleging C.P. was an abused and/or dependent child. An adjudicatory hearing was held on September 14, 2017. Mother did not attend and C.P. was adjudicated a neglected and dependent child. He was placed in the temporary custody of LCJFS and the case plan documents were approved for mother. C.P. was placed in a foster family home.

{¶ 5} Matthew Tracy was assigned to work with mother as her ongoing caseworker. Tracy developed case plan goals for mother which included both mental health and a drug abuse assessments with follow through as to any recommendations, random drug screens, obtain and maintain stable employment and housing, gain understanding of C.P.'s needs and attend his medical appointments.

{¶ 6} Initially, mother struggled to address the case plan objectives and had very little contact with Tracy. On July 6, 2018, by agreement of the parties, the Order of Temporary Custody was extended to January 18, 2019. Mother made some progress toward case plan goals thereafter. The Order of Temporary Custody was extended a second time by agreement of the parties of February 15, 2019.

{¶ 7} On June 18, 2019, after mother failed to meet the case plan objectives, LCJFS filed a motion for permanent custody. A hearing was held on the motion on September 13, 2019.

{¶ 8} Ongoing caseworker Tracy testified he discussed the above mentioned case plan with L.P, who while initially angry about C.P. being removed from her custody, appeared motivated to engage in services and correct the identified issues. L.P. was to work toward increasing her parenting knowledge by better understanding C.P.'s special needs and developing an understanding of the importance of C.P.'s medical appointments. At the beginning of the agency's involvement, Tracy stated L.P. minimized C.P.'s medical issues, but did develop an understanding of his needs through the life of this matter. Nonetheless, Tracy continued to harbor concerns regarding L.P.'s ability to follow through with what is necessary for C.P.'s medical wellbeing. Tracy did not believe L.P. had progressed to a point where there was no longer a concern for C.P. in her care.

{¶ 9}   As for other aspects of her case plan, Tracy stated L.P initially did not want to engage in mental health counseling, and made no progress toward substance abuse treatment. Although L.P. had eventually did engage in mental health treatment, according to Tracy, she had failed to demonstrate consistency in attendance and following through with recommendations. L.P. admitted she continued to use marijuana which Tracy felt presented a safety risk for C.P. due to his need for 24-hour supervision.

{¶ 10} When L.P did eventually engage in mental health treatment in July 2018, she was evaluated at Behavioral Healthcare Partners of Central Ohio (BHP). Theresa Gehr, L.P.'s counselor, diagnosed L.P. with post-traumatic stress disorder, attention deficit, cannabis abuse, bipolar disorder and personality disorder. Her attendance at BHP and a recommended anger management group was sporadic. From November 2018 until the September 2019 permanent custody hearing, L.P. had attended only 7 individual counseling sessions, two of which were in August, 2019. Gehr believes L.P.'s mental health issues drive her substance abuse issues and that the former must be addressed before the latter will resolve. In short, L.P. continues to struggle with mental health and substance abuse issues.

{¶ 11} At the time of the permanent custody hearing, L.P. had secured appropriate income-based housing, however animal odors and feces were observed in the home. As to employment, at the permanent custody hearing L.P. testified she was working as a bartender at one downtown Columbus bar and as a dancer at another. L.P. stated she earns between $800 and $900 a night dancing, which she does 3 nights a week, and tends bar the remaining nights. Despite this report, L.P. had never provided Tracy with any evidence of stable income or employment. Due to her reported high income, Tracy

also had concerns regarding L.P.'s compliance with her income-based housing arrangement. As of the permanent custody hearing, L.P. had never paid rent due to her inability to maintain employment.

{¶ 12} Of further concern was the fact that L.P. had no child care plan in place. She acknowledged she was not able to immediately meet C.P.'s needs. Her intent, however, was to obtain childcare for C.P. from 8:00 p.m. until 2:30 a.m. She would then pick him up and take him home to sleep the rest of the night. Additionally, a major concern surrounding C.P.'s removal was his exposure to inappropriate individuals in L.P.'s life who may have caused his injuries. L.P. continued to have contact with I.W., one such individual of concern, and had at one point after C.P.'s removal, cohabitated with I.W. Over the life of this matter, there were two instances of violence between the two and as late as two weeks before the hearing I.W. was observed in the home at least once a week.

{¶ 13} In November 2018 L.P. was charged with misdemeanor theft after a shoplifting incident. She was granted intervention in lieu of conviction (ILC) in February 2019. L.P. failed to comply with the requirements of ILC. Her conditions essentially mirrored her case plan in the instant matter, with the additional requirement of a daily call in to see if she was to submit to a random drug screen beginning in May 2019. As of September 2019, L.P. had failed to call in on 14 occasions and had failed to report as directed for 11 drug screens. She further failed to produce proof of employment and failed to follow the recommendations of BHP. As a result of her non-compliance, L.P.'s ILC was revoked on September 12, 2019. She was sentenced to 30 days incarceration, 21 days suspended. She was to begin serving her jail time shortly after the permanent custody hearing.

{¶ 14} L.P's visitation with C.P. was supervised throughout the pendency of this matter. After L.P. was in a car accident in February 2019, visitation occurred in her home supervised by C.P.'s foster mother B.B. Visits went well and L.P. exhibits a bond with C.P. L.P attended the majority of C.P.'s medical appointments with C.P.'s foster mother and demonstrated an ability to apply tools and coping mechanisms provided by C.P.'s doctors to manage C.P.'s difficult behaviors.

{¶ 15} C.P. has resided with his current foster family since August 2018. C.P. is very attached to his foster mother and the family has expressed interest in adopting C.P. as no relatives or kinship placements have expressed interest in caring for C.P.

{¶ 16} Attorney Laurie Wells served as Guardian ad Litem (GAL) for C.P. She observed C.P. had made significant positive progress in his current placement, and that his basic and special needs were met. Her final report recommended a grant of permanent custody to LCJFS would be in C.P.'s best interest, and this remained her recommendation after hearing the evidence presented at the permanent custody hearing..

{¶ 17} On October 23, 2019, the trial court issued its judgment entry granting LCJFS's motion for permanent custody. It is from this entry that L.P. appeals raising two assignments of error as follow:

I

{¶ 18} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY FAILING TO CONSIDER ALL FIVE BEST INTEREST FACTORS AS REQUIRED BY R.C. 2151.414(D)(1)(a) through (e)."

II

{¶ 19} "THE JUVENILE COURT'S JUDGMENT GRANTING PERMANENT COURT COMMITMENT OF THE MINOR CHILD TO LICKING COUNTY CHILDREN'S SERVICES WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I, II

{¶ 20} We address L.P.'s assignments of error together. In her first assignment of error, appellant argues that the trial court failed to consider all of the factors for determining the best interests C.P. as set forth in R.C. 2151.414(D)(1)(a) through (e). In her second assignment of error, L.P. argues the trial court's granting of LCJFS's motion for permanent custody was against the manifest weight of the evidence. We disagree.

Permanent Custody

{¶ 21} R.C. 2151.414(B)(1) states permanent custody may be granted to a public or private agency if the trial court determines by clear and convincing evidence at a hearing held pursuant to division (A) of R.C. 2151.414, that it is in the best interest of the child and any of the following apply:

> (a) The child is not abandoned or orphaned* * *and the child cannot
> be placed with either of the child's parents within a reasonable time
> or should not be placed with the child's parents.
> (b) The child is abandoned.
> (c) The child is orphaned, and there are no relatives of the child who
> are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period* *

*

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶ 22} Therefore, R.C. 2151.414(B) provides a two-pronged analysis the trial court is required to apply when ruling on a motion for permanent custody. In practice, the trial court will determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

Best Interests

{¶ 23} In determining the best interest of a child for purposes of permanent custody disposition, the trial court is required to consider the factors contained in R.C. § 2151.414(D). These factors are as follows:

(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home

providers, and any other person who may significantly affect the child;

(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;

(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

Standard of Review

{¶ 24} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. See also, *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 361 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross* at 477. As an

appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base his or her judgment. *Cross Truck v. Jeffries*, Guernsey App. No. CA-5758, 1982WL2911 (Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). Furthermore, it is well-established that the trial court is in the best position to determine the credibility of witnesses. See, e.g., *In re Brown*, Summit App. No. 21004, 2002-Ohio-3405, ¶ 9, citing *State v. DeHass*, 10 Ohio St .2d 230, 227 N.E.2d 212 (1967).

## Mother's Arguments

{¶ 25} Although L.P. argues the trial court failed to consider each of the required best interests factors, she fails to identify which factor or factors were not considered. Moreover, our review of the trial court's judgment entry clearly indicates the trial court did consider all of the relevant factors. Magistrate's Decision, October 23, 2019 at 15-17. We therefore find L.P.'s first assignment of error without merit.

{¶ 26} As to L.P.'s second assignment of error, the record here reflects C.P. had been in the custody of the LCJFS for twelve or more months of a consecutive twenty-two-month period, from July 18, 2017 through June 18, 2019, when LCJFS filed its motion for permanent custody. L.P. does not dispute this fact. This court has adopted the position that proof of temporary custody with an agency for twelve or more months of a consecutive twenty-two-month period alone is sufficient to award permanent custody. *In the Matter of A.S., V.S., and Z.S.*, 5th Dist. Delaware No. 13 CAF 050040, 2013-Ohio-

4018; In re S.H, 5th Dist. Knox No. 13CA17, 2013-Ohio-4441, ¶ 11. Therefore, a finding that grounds existed for permanent custody cannot be against the manifest weight of the evidence.

{¶ 27} Even if that were not so, as discussed in our statement of facts L.P. failed to adequately address her employment situation, mental health issues, and substance abuse issues. T. 26-37, 184, 188-189, 190, 196-198, 215-216. She further continued to have contact with inappropriate individuals who could pose a threat to both herself and C.P. T. 128-130.

{¶ 28} Further, C.P. had been in the same foster home for more than a year at the time of the permanent custody hearing. T. 123-124. C.P.'s foster family sees to his special needs, is interested in adopting C.P. and even permitting L.P to remain a part of C.P.'s life if L.P. remains appropriate. T. 141, 146-147.

{¶ 29} Finally, C.P.'s GAL filed a report in this matter recommending permanent custody be granted to LCJFS. She reiterated this recommendation at the conclusion of testimony at the permanent custody hearing. T. 313.

{¶ 30} Thus, while L.P. did make progress toward understanding and being attentive to C.P.'s special needs, regrettably, she still failed to remedy crucial aspects of her case plan. We find the record as a whole therefore supports the trial court's conclusions that LCJFS made reasonable efforts and permanent custody to LCJFS is in the best interests of the child.

By Wise, Earle, J.

Hoffman, P.J. and

Wise, John, J. concur.

EEW/rw